## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| **KRISTYN REAM**<br>   8520 Hayden Lane<br>   Annadale, VA 22003<br><br>            Plaintiff,<br><br>v.<br><br>**IN-Q-TEL, INC.,**<br>   1800 Tysons Blvd., Suite 1200,<br>   McLean VA 22102<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>) **Civil Action No.**<br>)<br>)<br>)<br>)<br>**)**<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

(FMLA, Sex Discrimination and Equal Pay Act)

## INTRODUCTION

1. Plaintiff Kristyn Ream brings this action against Defendant, In-Q-Tel, Inc., to remedy employment discrimination against her on the basis of interference and retaliation in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq*, gender/sex discrimination in violation of the Virginia Human Rights Act, Virginia Code §§ 2.2-3900 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, and pay inequity based on sex in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d).

## JURISDICTION

2. This Court has jurisdiction over this cause of action pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 2617(a)(2) and 42 U.S.C. § 2000e-5(f).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3. Plaintiff has exhausted her administrative remedies by filing a charge of discrimination with the U.S. Equal Employment Opportunity Commission against In-Q-Tel Inc., on January 10, 2025. A right to sue notice was issued on July 30, 2025. Plaintiff is filing this Complaint well within 90 days of receiving the notice.

## VENUE

4. Venue is proper in the Eastern District of Virginia as Plaintiff was employed by Defendant in this judicial district and the acts complained of occurred in this judicial district.

## PARTIES

5. Kristyn Ream is a citizen of Fairfax County and the United States.

6. Defendant In-Q-Tel, Inc. ("IQT") is a corporation headquartered at 1800 Tysons Blvd., McLean, Virginia 22102, and does business within this District.

## FACTS

7. Ms. Ream began working at IQT in April 2022 as Vice President of the Insights team. She received positive reviews and was considered for advancement.

8. On March 31, 2023, Ms. Ream commenced maternity leave under the Family and Medical Leave Act (FMLA) following the birth of her child.

9. Upon returning from leave in July 2023, her role was immediately undermined and diminished. IQT managers made repeated comments tying her alleged performance issues to her maternity leave and childcare responsibilities.

10. In September 2023, Jake Harrington, the male colleague who had filled in during her leave, sent a draft article to the Editorial Director without showing it to Ms. Ream, despite her role as Vice President of Insights.

11. Between September and November 2023, Ms. Ream was excluded from critical meetings, projects, and decisions within her scope of responsibility, including the Board Book and Requests for Insights. When Ms. Fox needed support completing the Board Book, she bypassed Ms. Ream and asked Mr. Harrington to handle it instead.

12. In November 2023, Ms. Ream was excluded from the evaluation and discussion of a Request for Insights submission, a duty that fell squarely within her position.

13. In November 2023, Ms. Fox told Ms. Ream that Mr. Harrington was continuing to meet with her 1-1 and requesting to lead the international portion of Insights without reporting to Ms. Ream, despite the international Insights already being fully integrated into the Insights process, reporting, and review chain under Ms. Ream.

14. On March 12, 2024, Ms. Fox admitted to Ms. Ream that Mr. Harrington was undermining her by going directly to Ms. Fox with his own agendas. Rather than correcting this conduct, Ms. Fox entertained his efforts to take over Ms. Ream's responsibilities.

15. On April 16, 2024, Ms. Fox told Ms. Ream she would instruct Mr. Harrington to "cut it out," but instead, Ms. Fox ultimately terminated Ms. Ream's employment.

16. On April 25, 2024, Ms. Ream received an excellent performance review, exceeding expectations. Despite this review, leadership continued to erode her role and assign her responsibilities to Mr. Harrington. Additionally, a male employee, Mr. Zuluaga, who was not meeting performance expectations was placed on a Performance Improvement Plan by Ms. Ream at the direction of Ms. Fox. Mr. Zuluaga continued to work at In-Q-Tel through April 2025 and was given Ms. Ream's office. Ms. Ream was never placed on a Performance Improvement Plan.

17. On multiple occasions, managers Adrienne Lewis and Julianne Sobral reiterated that Ms. Ream's difficulties stemmed from "how you came back from maternity leave" and her parental responsibilities.

18. In June 2024, IQT formally removed Ms. Ream's supervisory responsibilities without providing specific, actionable, or written feedback, and failed to provide any legitimate performance-based reason.

19. In September 2024, Ms. Lewis stated while in the presence of Ms. Sobral that her issues with Ms. Ream were because of "how you came back from maternity leave."

20. On October 2, 2024, Ms. Ream was told she had no place on the Insights team and was offered severance.

21. On or about October 15, 2024, Ms. Fox told Ms. Ream that she was "miserable to work for" because she had just returned from maternity leave and "with your kids always being sick."

22. On October 21, 2024, Ms. Sobral told Ms. Ream that she could not remain in her role because of "how you came back from maternity leave."

23. On October 24, 2024, IQT finalized Ms. Ream's termination. Male peers who had not taken FMLA leave or raised childcare needs were not subjected to similar treatment. Men who raised childcare needs were met with empathy and support; they were always granted leave without any questions asked. Mr. Harrington and Mr. Zuluaga both took recurrent leave for childcare during Ms. Ream's tenure and were not penalized, including when Mr. Harrington's child had repeated visits to the orthopedist and Mr. Zuluaga's daughter was injured playing sports.

24. On October 25, 2024, Ms. Sobral sent Ms. Ream a new severance offer that Ms. Ream did not sign.

25. On October 28, 2024, Ms. Sobral again stated that Ms. Ream's termination was because of "how you came back from maternity leave."

26. In approximately early November 2025, Ms. Sobral emailed Ms. Ream requesting Ms. Ream submit her resignation. Ms. Ream did not respond and did not resign.

27. In approximately mid-November, Ms. Sobral issued a letter to Ms. Ream stating she was being terminated and needed to return her equipment to the company, further demonstrating that Ms. Ream did not resign and was, in fact, terminated by In-Q-Tel.

28. Throughout her tenure, Ms. Ream was paid more than $20,000 below the midpoint for her VP position and earned less than male Senior Directors and Vice Presidents despite performing substantially equal, if not greater, work in standing up a new business area, developing new products, and generating a significant amount of new revenue for the company.

29. IQT's leadership, including Fox and Sobral, promoted and supported male employees while denying similar opportunities to women, including Ms. Ream. Molly Just, also a mother, complained that Sean Gallagher and Coley Lewis discriminated against her; however, she quit after her complaints failed to be mediated and she was unsupported by Ms. Fox and Ms. Sobral.

30. Men on the Partnerships team (Terrence Kim, Mitch Zink, and Joel Meredith) took paternity leave with no impact to their positions, status, or performance reviews and feedback throughout 2024 and early 2025.

31. As a result of IQT's actions, Ms. Ream suffered loss of income, emotional distress, anxiety, depression, reputational harm, and other damages.

## CLAIMS

### COUNT I – FMLA Retaliation and Interference

32. Ms. Ream engaged in protected activity under the FMLA when she took maternity leave.

33. Defendant IQT interfered with Ms. Reams FMLA rights and retaliated against her by stripping her duties, undermining her authority, and ultimately terminating her employment violating the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615.

34. As a result of Defendant's interference and retaliatory treatment of her, Ms. Ream has suffered and continues to suffer loss of pay, career damage, physical pain, emotional distress, and mental anguish.

### COUNT II – Sex Discrimination

35. Defendant IQT discriminated against Plaintiff on the basis of her sex and parental status by treating her less favorably than similarly situated male employees.

36. Defendant IQT's managers repeatedly tied adverse actions because Plaintiff is a woman who needed maternity leave and had parental obligations, violating Title VII of the Civil Rights Act and the Virginia Human Rights Act of 1974, 42 U.S.C. § 2000e *et seq*.

37. As a result of Defendant's discriminatory treatment of her, Ms. Ream has suffered and continues to suffer loss of pay, career damage, physical pain, emotional distress, and mental anguish.

### COUNT III – Equal Pay Act

38. Ms. Ream was paid substantially less than male Vice Presidents and Senior Directors performing work requiring equal skill, effort, and responsibility.

39. Defendant IQT lacked any legitimate justification for the pay disparity and violated the Equal Pay Act, 29 U.S.C. § 206(d).

40. As a result of Defendant's discriminatory treatment of her, Ms. Ream has suffered and continues to suffer loss of pay, career damage, physical pain, emotional distress, and mental anguish.

COUNT IV – Retaliation

41. Ms. Ream engaged in protected activity by raising concerns about pay inequity and discrimination. In April 2024, Ms. Ream met with HR VP Lauren Christmas to inquire about her pay being below the midpoint and asked why her raise was only 4% when Mr. Harrington was provided with a 7% raise.

42. Defendant IQT retaliated against Ms. Ream by further undermining her role, removing her from management, and terminating her employment violating Title VII of the Civil Rights Act and the Virginia Human Rights Act of 1974, 42 U.S.C. § 2000e et seq.

43. As a result of Defendant's retaliatory treatment of her, Ms. Ream has suffered and continues to suffer loss of pay, career damage, physical pain, emotional distress, and mental anguish.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enters judgment in his favor and against Defendants on all claims brought herein and provide him with the following relief:

a. award Plaintiff $500,000 compensatory damages against Defendant, plus interest.

b. award Plaintiff $500,000 punitive damages against Defendant, plus interest.

c. award Plaintiff the costs of bringing and maintaining this civil action and the investigation that preceded it, including reasonable attorneys' fees and costs.

d. award plaintiff lost wages in an amount to be proven at trial.

    e.    award plaintiff $75,000 for the Cash Balance Pension Plan, with vesting protection as of June 2025, and removal of any language regarding revocation of payments in Section 7A.

    f.    award plaintiff the full bonus earned in the amount of $61,350.

    g.    award plaintiff $2,000 for contributions to her children's 529 education plan.

    h.    enjoin Defendant from discriminating or retaliating against plaintiff in the future.

    i.    award Plaintiff such other and further relief as the interests of justice may require.

## JURY DEMAND

Plaintiff hereby requests a jury trial on all issues of fact and damages.

Date: September 23, 2025

Respectfully submitted,

*/s/ Ellen K. Renaud*
Ellen K. Renaud [VA # 47326]
Law Offices of Ellen K. Renaud
7839 Seth Hampton Drive
Alexandria, VA 22315
(301) 908-6060
Ellen@RenaudLawyers.com

*Counsel for Plaintiff*